HOLLAND & KNIGHT LLP
  Vince Farhat (SBN 183794)
  vince.farhat@hklaw.com
  Kristina S. Azlin (SBN 235238)
  kristina.azlin@hklaw.com
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Telephone 213.896.2400
Facsimile  213.896.2450

 Jose A. Casal (*pro hac vice*)
 jose.casal@hklaw.com
 Mitchell E. Herr (*pro hac vice*)
 mitchell.herr@hklaw.com
701 Brickell Avenue. Suite 3300
Miami, Florida 33131
Telephone 305.789.7736

*Attorneys for Josias Dewey, Court-appointed Receiver for Receivership Entities*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>TITANIUM BLOCKCHAIN INFRASTRUCTURE SERVICES, INC.; EHI INTERNETWORK AND SYSTEMS MANAGEMENT, INC. aka EHI-INSM, INC.; and MICHAEL ALAN STOLLERY aka MICHAEL STOLLAIRE,<br><br>Defendants. | Case No. 18-4315 DSF (JPRx)<br><br>**FIRST INTERIM FEE APPLICATION OF HOLLAND & KNIGHT LLP, AS COUNSEL TO RECEIVER, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES; CERTIFICATION OF COUNSEL IN SUPPORT THEREOF; [*PROPOSED*] ORDER**<br><br>**[FRCP 66; L.R. 66-7]**<br><br>Date: Mon., April 1, 2019<br>Time: 1:30 pm<br>Ctrm: 7D<br>Judge: Hon. Dale S. Fischer |

#60720133_v5

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday, April 1, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Dale S. Fischer, in Courtroom 7D of the United States District Court, Central District of California, Western Division, 350 West 1st Street, 6th Floor, Los Angeles, California, 90012, Holland & Knight LLP ("Counsel" or "H&K"), counsel to Josias Dewey, as Court-appointed Receiver (the "Receiver") for the estates of Defendant Titanium Blockchain Infrastructure Services, Inc. and its subsidiaries and/or affiliates (collectively, the "Receivership Entities"), will and hereby does submit this first interim fee application (the "Application").

This Application is submitted pursuant to paragraphs XI(F) and XVII of this Court's Order Appointing Permanent Receiver, entered May 30, 2018 (the "Permanent Receivership Order"), Rule 66 of the Federal Rules of Civil Procedure, and Local Rule 66-7. This Application is made following the conference of counsel pursuant to Local Rule 7-3 which took place on and before Friday, February 15, 2019.

This Application is based upon this Notice of Application and Application, the attached Memorandum of Points and Authorities and Certification of Counsel, all papers and records on file herein, and such other matters as may be presented to the Court at or before the hearing on this Application.

Dated: February 28, 2019          Respectfully submitted,

/s/ *Jose Casal*
Jose Casal (*pro hac* vice)
Kristina S. Azlin (SBN 235238)
Holland & Knight LLP
Counsel for Josias N. Dewey, Court-appointed permanent receiver for Defendant Titanium Blockchain Infrastructure Services, Inc.

*Attorneys for Josias Dewey, Court-appointed Receiver for Receivership Entities*

#60720133_v5

**TABLE OF CONTENTS**

I.   SUMMARY OF FEE REQUEST ................................................................. 3

II.  STANDARDIZED FUND ACCOUNTING REPORT ................................. 3

III. CASE STATUS ............................................................................................ 4

IV.  BACKGROUND .......................................................................................... 6

V.   SUMMARY OF SERVICES PROVIDED ................................................... 7

VI.  FEE APPLICATION .................................................................................... 9

VII. ARGUMENTS AND AUTHORITIES IN
     SUPPORT OF FEE APPLICATION ........................................................... 10

VIII. CONCLUSION .......................................................................................... 13

# FIRST INTERIM FEE APPLICATION OF HOLLAND & KNIGHT LLP, AS COUNSEL TO RECEIVER, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

Pursuant to paragraphs XI(F) and XVII of this Court's Order Appointing Permanent Receiver, entered May 30, 2018 (the "Permanent Receivership Order"), Rule 66 of the Federal Rules of Civil Procedure, and Local Rule 66-7, Holland & Knight LLP ("Counsel" or "H&K"), counsel to Josias Dewey, as Court-appointed Receiver (the "Receiver") for the estates of Defendant Titanium Blockchain Infrastructure Services, Inc. and its subsidiaries and/or affiliates (collectively, the "Receivership Entities"), hereby submits this first interim fee application (the "Application").

In support of this Application, H&K respectfully states the following:

## I. SUMMARY OF FEE REQUEST

1. This initial fee application covers the period from the Receiver's initial appointment on May 23, 2018 through June 22, 2018 (the "First Application Period") and is submitted in accordance with the Permanent Receivership Order, the Local Rules of this Court, and the Billing Instructions for Receivers in Civil Actions Commenced by the United States Securities and Exchange Commission (the "Billing Instructions").

2. Through this Application, H&K seeks approval of $52,828.49 in fees and $72,171.51[1] in expenses, for a total of $125,000, pursuant to the fee cap applicable to the first thirty (30) days of the receivership (the "Fee Cap").[2]

## II. STANDARDIZED FUND ACCOUNTING REPORT

3. Attached as **Exhibit A** is the Standardized Fund Accounting Report (SFAR) for the Receivership Entities for the period from May 30, 2018 through December 31,

---

[1] These expenses include $66,451.25 for forensic services rendered by Kroll Cyber Security and invoiced to H&K.

[2] H&K actually incurred $144,369.52 in fees and $72,171.51 in expenses, for a total of $216,541.03, during the First Application Period, but is limiting this application to $125,000 pursuant to the Fee Cap. H&K does not intend to make an application for the remaining $91,541.03 in fees incurred over the Fee Cap.

#60720133_v5

2018 (the "SFAR Reporting Period").[3]

### III. CASE STATUS

4.  Cash On Hand: The amount of cash on hand in the Receiver's bank account is $115,566.70 as of the end of the most recent SFAR Reporting Period (December 31, 2018). These funds were received by (i) taking control of the US Bank bank account held by Titanium Blockchain Infrastructure Services, Inc. ("TBIS") ($58,583.45), and (ii) taking control of the JPMorgan Chase bank account held by TBIS ($252,208.40).

5.  Other Assets: In addition to the cash on hand listed above, the Receiver has also taken possession, or has caused third party custodians to freeze, the following assets:

| Asset | Units (if applicable) | Unit Value (as of 12/31/2018) | Aggregate Value (as of 12/31/2018) | Unit Value (as of 02/26/2019) | Aggregate Value (as of 02/26/2019) |
|---|---|---|---|---|---|
| Bitcoin (BTC) | 151.78 | $3,819.740000 | $579,760.14 | $3,848.09 | $584,063.10 |
| Bitcoin Cash (BTH) | 95.12103983 | $159.890000 | $15,208.90 | $133.13 | $12,663.46 |
| Bitcoin SV | 95.12103983 | $87.450000 | $8,318.33 | $69.14 | $6,576.67 |
| Ether (ETH) | 2156.288899 | $136.820000 | $295,023.45 | $136.19 | $293,664.99 |
| Litecoin (LTC) | 4972.997747 | $31.340000 | $155,853.75 | $45.40 | $225,774.10 |
| Zcash (ZEC) | 7.9046 | $58.600000 | $463.21 | $52.16 | $412.30 |
| Dash (DASH) | 66.59959886 | $81.610000 | $5,435.19 | $82.33 | $5,483.14 |
| Electroneum (ETN) | 21035513.98 | $0.007486 | $157,471.86 | $0.01 | $146,428.21 |
| Computer equipment, televisions, phones (est) | | | $5,000.00 | | $5,000.00 |
| | | Total | $1,217,534.83 | | $1,275,065.98 |

6.  The Receiver has established multiple cryptocurrency wallets to hold the cryptocurrencies listed above and is either (i) in possession of the private keys associated with these wallets, or (ii) has caused a third party custodian to freeze such assets. Based on values taken from a market aggregator, the value of the cryptocurrency assets is approximately $1,275,065.98 as of February 27, 2019 and $1,217,534.83 as of the end of

---

[3] While the First Application Period only includes the first thirty days of the receivership in order to demonstrate compliance with the Fee Cap, the SFAR Reporting Period runs through the end of the most recent quarter, providing a more accurate and complete picture of the current case status.

#60720133_v5

the SFAR Reporting Period (December 31, 2018). This figure should be taken with caution because the value of cryptocurrency assets fluctuates rapidly, and the markets for some cryptocurrencies can be opaque and illiquid, and subject to market manipulation. Furthermore, some assets, like Electroneum (ETN), may constitute unregistered securities, making it difficult, or impossible, for the Receiver to liquidate to fiat currency.

7. The Receiver anticipates filing a motion to seek authorization from the Court to liquidate the assets listed above before he files the next status report.

8. <u>Expenses</u>: The Receiver has incurred administrative expenses as a result of his efforts to marshal and preserve the assets of the Receivership. For the First Application Period as well as the remainder of the SFAR Reporting Period, these expenses were advanced by H&K and by Kroll, as set forth in attached **Exhibit E**. Lastly, after the Receivership Entities' assets were frozen, several of TBIS's payroll payments, initiated from US Bank, were mistakenly reversed. The Receivership, throughout the SFAR Reporting Period, has worked to compensate those employees and contractors whose payroll payments were mistakenly reversed as well as those employees who assisted the Receiver after the Receivership was established, and, as a result, the Receivership has incurred payroll expenses, and transactional costs related thereto, including wire fees, in the approximate amount of $195,225.13.

9. <u>Creditor Claims</u>: Given that no determination of liability has been made at this time, the Receiver has not promulgated a formal claims procedure or determined the validity of any possible creditor claims. However, the Receiver has established an informal claims process, published on the Receiver's website, through which it has received, and tracked, several hundred inquiries and claims. The Receiver is still evaluating the investor contributions made to TBIS based upon information collected from computers and servers and also from the information provided by people who have contacted the Receiver via its informal claims process. At present, the total number of investor claims is unknown but will likely be in the several thousands.

10. The Receiver is working on formulating a creditor claims process, including

#60720133_v5

1  procedures for (i) confirming the claims received through its informal claims process, (ii) providing notice to potential claimants who have not yet inquired; (ii) receiving and reviewing claims, (iii) recommending to the court procedures for establishing and determining the amount of allowed claims, and (iv) the distribution of allowed claims to investors. To date, the Receiver has not disbursed any funds to any investors and is awaiting confirmation of a determination of liability of the Defendants before disbursing any funds to investors.

11.  The Receiver has been negotiating with additional third parties, as well as the Defendant, with respect to certain cryptocurrency assets that were transferred from a wallet owned by TBIS to a wallet owned by a third-party and hosted by Coinbase. The cryptocurrency is the property of TBIS and therefore should be transferred to the Receivership. The Receiver has successfully negotiated with all third-parties involved, including Defendant, to enter into a stipulation releasing the cryptocurrency to the Receivership. The Receiver intends to file a written stipulation shortly and anticipates that this issue will be resolved before the hearing date on this Application.

12.  The Receiver has filed a notice of receivership in all relevant jurisdictions where assets of the Receivership are believed to be located. In addition, as a precaution, the Receiver has filed a notice of receivership in a large number of other jurisdictions.

### IV.   BACKGROUND

13.  On May 22, 2018, the Securities and Exchange Commission filed a complaint against Defendants Titanium, EHI Internetwork and Systems Management, Inc., also known as EHI-INSM, Inc., and Michael Alan Stollery, also known as Michael Stollaire, along with an application for the appointment of a receiver for the Receivership Entities. After reviewing the application, the Court concluded that the appointment of a receiver in this action was necessary and appropriate for the purposes of marshaling and preserving all assets, tangible and intangible, that are owned, controlled or possessed by the Receivership Entities.

14.  Accordingly, on May 23, 2018, the Court entered the Temporary Restraining

#60720133_v5

Order (the "TRO") and Orders (1) Freezing Assets; (2) Prohibiting the Destruction or Alteration of Documents; (3) Granting Expedited Discovery; (4) Requiring Accountings; and (5) Appointing a Temporary Receiver (the "Temporary Receivership Order"), appointing Josias N. Dewey as temporary receiver for the Receivership Entities. On May 24, 2018, all Defendants were served with the summons, complaint, TRO, and Temporary Receivership Order.

15. On May 30, 2018, the Court entered the Permanent Receivership Order (together with the Temporary Receivership Order, collectively, the "Receivership Order"). The Defendants consented to the entry of the Permanent Receivership Order.

16. On June 6, 2018, the Court entered orders approving the Receiver's decision to employ H&K as legal counsel, and Kroll Cyber Security, LLC ("Kroll") as a forensic and investigative consultant, to assist him in carrying out his duties as the Receiver. H&K and Kroll began working on this matter on or about May 23, 2018.

## V. SUMMARY OF SERVICES PROVIDED

17. H&K has assisted the Receiver with all aspects of his duties in this case during the First Application Period. As set forth in more detail in the Receiver's Initial Status Report for Receivership Estate of Titanium Blockchain Infrastructure Services, Inc., filed on June 25, 2018 (the "Initial Status Report"), the Receiver and his advisors have focused most of their efforts on investigating, identifying, collecting, and preparing an inventory of assets of the Receivership Entities. The principal assets recovered include cryptocurrency, U.S. currency, electronic data, and physical assets such as computer equipment.

18. On May 24, 2018, the Receiver and his legal counsel, together with the assistance of Kroll, were able to seize and search computer equipment, mobile phones and other electronic devices belonging to the Receivership Entities and interview Mr. Stollery and certain of his associates at their offices in Sherman Oaks, California and Springfield, Oregon.

19. Through that search and those interviews, the Receiver identified and took

#60720133_v5

control of certain cryptocurrency assets. In addition, the Receiver collected other assets at the Sherman Oaks site and from an office site in Springfield, Oregon that had been leased on behalf of Titanium.

20. Additional actions in which H&K has assisted the Receiver include, but are not limited to, the following:

a. Establishing a Receiver website and redirecting the DNS for http://tbis.io, email address (TBISReceiver@gmail.com), so that Titanium's investors and other creditors can receive information pertaining to the receivership;

b. Identifying cryptocurrency wallets and/or accounts controlled by the Defendants and containing the cryptocurrencies bitcoin, Bitcoin Cash, Ether, Litecoin, Dash, Electroneum, ZCash, BAR and TBAR, and either transferring the cryptocurrency to wallets controlled by the Receiver or causing third party custodial agents to freeze such accounts;

c. Taking control of Titanium's U.S. Bank account and having the entire account balance transferred to an account established by the Receiver;

d. Taking control of Titanium's Chase Bank account and requesting that the entire account balance be transferred to an account established by the Receiver;

e. Securing access to Mr. Stollery's safe deposit box and the retrieval of relevant information and assets from same;

f. Reviewing Titanium's provisional patent application and GitLab account, and conducting telephone interviews with Titanium's chief technology officer, to evaluate the current value of intellectual property and Titanium as a going concern;

g. Engaging Kroll to inventory and image computers and phones collected from Titanium's offices in Sherman Oaks, California, and Springfield, Oregon;

h. Interviewing Titanium's chief operating officer regarding business operations and matters pertaining to theft of virtual currencies from the Defendant Titanium;

#60720133_v5

    i. Obtaining information from special agents with the Secret Service and Federal Bureau of Investigations regarding the theft of virtual currencies from the Defendant Titanium;

    j. Securing personal property owned or leased by Titanium at both of its offices;

    k. Changing the locks at both commercial offices of the Defendant Titanium;

    l. Negotiating with commercial landlords to secure the termination of Titanium's leases;

    m. Serving written notices on cryptocurrency exchanges and other third parties to locate additional assets, including certain overseas exchanges;

    n. Analyzing payroll and employment matters, including status of employment tax payments; and

    o. Terminating the employment of employees of Defendant Titanium.

21. Each of these tasks was reasonably necessary to identify and secure assets of the Receivership and to work on identifying additional assets for recovery.

## VI. FEE APPLICATION

22. During the First Application Period, H&K professionals have provided services to the Receiver for the benefit of the Receivership Entities with a value of $144,369.52, and incurred reimbursable expenses in the amount of $72,171.51,[4] for a total of $216,541.03 in actual fees and expenses. Pursuant to paragraph XVII of the Permanent Receivership Order, fees and costs for the Receiver and all others retained to assist him in the administration and liquidation of the estate are capped at $125,000 for the initial 30 days of the receivership. H&K has therefore reduced its fees by $91,541.03, and through this Application, H&K requests entry of an Order approving the remaining fees in the amount of $52,828.49, and reimbursable expenses in the amount of $72,171.50, for a total of $125,000 (the "Fees") on an interim basis.

---

[4] These expenses include $66,451.25 for forensic services rendered by Kroll and invoiced to H&K.

#60720133_v5

23. This Application is the first fee application that H&K has submitted in this matter. Accordingly, no prior orders have been entered as to any interim applications, no amounts have been allowed or disallowed, and no payments have been made to H&K.

24. Through this Application, H&K further requests entry of an Order authorizing the Receiver to make payment to H&K in the amount of $125,000.

25. The names, hours worked, hourly billing rates, and total fees of all H&K professionals who have billed time to this matter, excluding the Receiver, are listed in the attached **Exhibit B**. Standard H&K hourly billing rates have been discounted by 15%. Travel time has been billed at 50% of H&K's standard hourly billing rates in accordance with the Billing Instructions, and those reduced rates have been further discounted by 15%. In accordance with the Fee Cap, H&K's actual fees for the First Application Period have been further reduced by $91,541.03.

26. In further accordance with the Billing Instructions, H&K professionals have separately categorized their services by task. The attached **Exhibit C** summarizes the respective number of hours incurred relative to each task category during the First Application Period.

27. The services rendered by H&K are itemized fully in the contemporaneously maintained electronic time records attached hereto as **Exhibit D**.

28. An itemization of reasonable and reimbursable expenses incurred by H&K at the levels set forth in accordance with the Billing Instructions, including a copy of the Kroll invoice included among those expenses, is attached hereto as **Exhibit E**.

## VII. ARGUMENTS AND AUTHORITIES IN SUPPORT OF FEE APPLICATION

29. The district court's "power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *S.E.C. v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986). That broad authority "arises out of the fact that most receiverships involve multiple parties and

#60720133_v5

complex transactions." *Id.* [5] This "extremely broad" discretion "includes awards of receivership fees, including attorneys' fees." *Securities and Exchange Commission v. Wang*, 2015 WL 12656904, at *3 (C.D. Cal., Feb. 17, 2015, No. CV 13-7553 JAK (SS)), *citing In re San Vincente Medical Partners Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992) ("The award of receivership fees in an SEC action is analogous to the award of receivership fees in bankruptcy proceedings, and we review the district court's award for an abuse of discretion.").

30.  Decisions regarding the timing and amount of an award of fees and costs are committed to the sound discretion of the Court. *See Drilling & Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934) ("The court appointing the receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys."); *SEC v. Elliot*, 953 F.2d 1560, 1577 (11th Cir. 1992) (rev'd in part on other grounds, 998 F.2d 922 (11th Cir. 1993)); *Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 301 (6th Cir. 2009) ("[T]he district court has wide discretion in distributing receivership assets."); *Securities and Exchange Commission v. Wang*, 2015 WL 12656904, at *1; *SEC v. Small Business Capital Corp.*, 2014 WL 3920320, at *2 (N.D. Cal. Aug. 7, 2014).

31.  An award of interim fees may be appropriate where, like here, a receiver or the professionals employed by the receiver "regularly devote[] a portion of his time, either daily or weekly, to the administration of the estate[.]" *In Re McGann Mfg. Co.*, 188 F.2d 110, 112 (3d Cir. 1951) (interim fees to bankruptcy trustee or his counsel).

32.  In allowing fees, a court should consider "the time, labor and skill required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the receiver[], the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained." *United States v. Code Prods. Corp.*, 362

---

[5] *See also Id.* at 1037 (Recognizing that "case law involving district court administration of an equity receivership (once the receivership is underway) is sparse…").

F.2d 669, 673 (3d Cir. 1966) (internal quotation marks omitted). In practical terms, receiver and professional compensation thus ultimately rests upon the result of an equitable, multi-factor balancing test involving the "economy of administration, the burden that the estate may be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services to the estate." *In re Imperial 400 Nat'l, Inc.*, 432 F.2d 232, 237 (3d Cir. 1970). Regardless of how this balancing test is formulated, no single factor is determinative and "a reasonable fee is based [upon] all circumstances surrounding the receivership." *SEC v. W.L. Moody & Co.*, Bankers (Unincorporated), 374 F.Supp. 465, 480 (S.D. Tex. 1974). Generally, the starting point is to multiply the number of hours expended by an hourly rate. *Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 427 (9th Cir. 1983) (bankruptcy case). The hourly rate is based on the rate the professional would charge for comparable service in other matters. *Id.*

33. "As a general rule, the expenses and fees of a receivership are a charge upon the property administered." *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994). These expenses include the fees and expenses of the Receiver's professionals, including H&K.

34. In support of the application, H&K submits the above-referenced Exhibits A-D for the Court's review, along with the Certification of Jose Casal addressing the reasonableness of the rates charged and hours billed by professionals at H&K.

35. H&K has charged fees that are 15% less than the standard billing rates for the professionals working on this matter, and those fees are at or below customary fees charged by like professionals in their respective markets. H&K has billed all reimbursable expenses at their actual costs with no mark-up added, and they are not seeking overhead charges. Further, pursuant to the Fee Cap, H&K's actual fees for the First Application Period have been further reduced by $91,541.03—which is an additional 63% discount.

36. As set forth above and in the Initial Status Report, H&K has assisted the Receiver in performing various tasks that have added value to the Receivership Entities. Each task was staffed and performed as efficiently as possible. The fees and expenses

#60720133_v5

sought in this Application are reasonable and were necessary for the proper administration of the Receiver's duties.

### VIII. CONCLUSION

H&K therefore respectfully requests that this Court enter an Order:

(i) Allowing, on an interim basis, fees in the amount of $52,828.49 and reimbursement of expenses in the amount of $72,171.51, for total compensation of $125,000 pursuant to the Fee Cap;

(ii) Authorizing and directing the Receiver to make payment to H&K in the amount of $125,000; and

(iii) Directing such other and further relief as the Court deems appropriate.

Dated: February 28, 2019

Respectfully submitted,

/s/ *Jose Casal*
Jose Casal (*pro hac* vice)
Kristina S. Azlin (SBN 235238)
Holland & Knight LLP
Counsel for Josias N. Dewey, Court-appointed permanent receiver for Defendant Titanium Blockchain Infrastructure Services, Inc.

*Attorneys for Josias Dewey, Court-appointed Receiver for Receivership Entities*

#60720133_v5