HOLLAND & KNIGHT LLP
Kristina S. Azlin (SBN 235238)
kristina.azlin@hklaw.com
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Telephone 213.896.2400
Facsimile  213.896.2450

Jose A. Casal (*pro hac vice*)
jose.casal@hklaw.com
Mitchell E. Herr (*pro hac vice*)
mitchell.herr@hklaw.com
701 Brickell Avenue. Suite 3300
Miami, Florida 33131
Telephone 305.789.7736

*Attorneys for Josias Dewey, Court-appointed Receiver for TBIS*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>TITANIUM BLOCKCHAIN INFRASTRUCTURE SERVICES, INC.; EHI INTERNETWORK AND SYSTEMS MANAGEMENT, INC. aka EHI-INSM, INC.; and MICHAEL ALAN STOLLERY aka MICHAEL STOLLAIRE,<br><br>Defendants. | Case No. 18-cv-4315 DSF (JPRx)<br><br>**RECEIVER'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF CLAIMS PROCESS AND BAR DATE; [*PROPOSED*] ORDER**<br><br>Date:  August 31, 2020<br>Time:  1:30<br>Ctrm:  7D<br>Judge: Hon. Dale S. Fischer |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on Monday, August 31, 2020, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Dale S. Fischer, in Courtroom 7D of the United States District Court, Central District of California, Western Division, 350 West 1st Street, 6th Floor, Los Angeles, California, 90012, Josias N. Dewey, as Court-appointed Receiver (the "Receiver") for the estate of Defendant Titanium Blockchain Infrastructure Services, Inc. ("TBIS"), will and hereby does submit this Motion for Approval of Claims Process and Proposed Bar Date ("Motion").

This Motion is submitted pursuant to paragraph XI(H) of this Court's Order Appointing Permanent Receiver, entered May 30, 2018 (the "Permanent Receivership Order") (Dkt. 48) and Rule 66 of the Federal Rules of Civil Procedure. The Receiver requests this Court's approval for the Receiver's proposed Claims Process, including the method by which the Receiver will provide notice to claimants, the method by which claimants may file claims, the methods by which the Receiver will determine eligible and ineligible claims, and the date by which all claims are to be filed (the "Bar Date").

This Motion is based upon this Notice of Motion and Motion, all papers and records on file herein, and such other matters as may be presented to the Court at or before the hearing on this Motion. This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on February 5, 2020.

Dated: July 28, 2020.                    Respectfully submitted,

                                         /s/ *Kristina S. Azlin*

                                         Kristina S. Azlin
                                         Jose Casal (*pro hac vice*)
                                         Holland & Knight LLP

                                         *Attorneys for Josias N. Dewey, Court-appointed Receiver for TBIS*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................... 1

II. FACTUAL BACKGROUND OF THE TBIS INITIAL COIN OFFERING ........................................................................................ 3

III. DISCUSSION .................................................................................................. 4

    A. Eligible Claimants should be creditors, those investors who acquired unregistered securities from TBIS and certain other investors who suffered a loss caused by TBIS's fraud. ................................................. 5

    B. Internet-based electronic notice is fair, reasonable, and comports with due process for internet-based virtual token fraud victims. ................. 8

    C. Internet-based Claim Submission is Appropriate for Internet-based Activities. ............................................................................................. 10

    D. Validating Claims Using Blockchain Transactional Information is Practicable, Efficient, and Accurate. ................................................... 11

    E. Claimants Should have the Opportunity to Object to Claim Determinations. .................................................................................... 12

    F. Proposed timeline and 90-Day Claims Window ................................ 13

    G. Distribution of Assets .......................................................................... 14

IV. CONCLUSION ............................................................................................. 14

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Browning v. Yahoo! Inc.*,
   No. C04-01463, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007) ............................. 9

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ............................................................................................... 5

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ............................................................................................... 8

*SEC v. Arisebank*,
   No. 3:18-cv-00186-M, 2019 WL 1796170 (N.D.Tex. Jan. 29, 2019)
   and (N.D. Tex. Feb. 1, 2019) ................................................................. 8-9, 11, 13

*SEC v. Hardy*,
   803 F.2d 1034 (9th Cir. 1986) ............................................................................ 4, 5

**Other State Cases**

*Lundell v. Dell, Inc.*,
   No. CIVA C05-3970, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) ....................... 9

**Federal Statutes**

15 U.S.C.
   § 77l ....................................................................................................................... 5
   § 77l(a) ................................................................................................................... 6

# RECEIVER'S MOTION FOR APPROVAL OF CLAIMS PROCESS AND PROPOSED BAR DATE

Pursuant to paragraphs XI(H) of this Court's Order Appointing Permanent Receiver, entered May 30, 2018 (the "Permanent Receivership Order") (Dkt. 48), and Rule 66 of the Federal Rules of Civil Procedure, Holland & Knight LLP ("Counsel" or "H&K"), counsel to Josias N. Dewey, as Court-appointed Receiver (the "Receiver") for the estate of Defendant Titanium Blockchain Infrastructure Services, Inc. ("TBIS"), hereby submits this Motion for Approval of Claims Process and Proposed Bar Date.

## I. INTRODUCTION

On May 22, 2018, the Securities and Exchange Commission brought an emergency action for both securities fraud and the sale of unregistered securities against TBIS and its subsidiaries and affiliates. (Dkt. 1.) As part of that action, and with the Defendants' consent, the United States District Court for the Central District of California appointed Josias N. Dewey receiver for TBIS. (Dkt. 48; *see also* Dkt. 47.)

The Receiver took custody of TBIS's assets and is presenting this plan as a precursor to an interim distribution to TBIS's victims of its securities fraud, victims of its sale of unregistered securities, and other eligible creditors. The Receiver will seek reimbursement of all reasonable administrative costs and expenses relating to the claims process from receivership assets. The Receiver will make every effort to conserve Receivership assets.

To that end, the virtual and online nature of this fraud presents opportunities for efficiencies typically unavailable in conventional receiverships. The unregistered securities at issue in this case are represented by virtual ERC-20 tokens that exist on the public Ethereum blockchain network (the "Ethereum Network"). The Ethereum Network is the decentralized transaction ledger on which Ether, one of the world's most popular cryptocurrencies, exists. Anyone acquiring an ERC-20 token must have control over an Ethereum public address, which is somewhat analogous to a bank account

inasmuch as it is the transferee reference for transfers of Ether and ERC-20 tokens. While it is technically possible for a transferee to acquire ERC-20 tokens without access to the internet, both the act of transferring Ether or other digital assets (e.g., bitcoin) as payment for the tokens and verifying receipt of the tokens require access the internet. As such, it is reasonable to assume that all victims who acquired ERC-20 tokens likely have access to the internet and have control over one or more Ethereum public address. Moreover, because most victims purchased the TBIS tokens using virtual currencies, the Receiver and Counsel can use blockchain transactional information to expedite the claims validation process , and ultimately, to compensate eligible claimants sooner. For those investors who did not purchase the TBIS tokens using a virtual currency and in other cases where the Receiver reasonably believes appropriate, compensation will be distributed using conventional paper checks.

      Under this proposal, costs are minimized by using an online claims process, automated blockchain-based claim validation, and, depending on market conditions and the claimants' preference, virtual asset funds distribution to reimburse validated claimants. By this method, the Receiver can reduce administrative expenses, increase claim processing speed, and distribute funds to victims in a fraction of the time when compared to conventional processes.

      The Receiver seeks the Court's approval to:

    a.    Define eligible claimants;

    b.    Provide notice and claims process instructions to claimants via electronic means;

    c.    Accept claims by electronic means;

    d.    Determine valid claim amounts;

    e.    Handle objections to claim determinations; and

    f.    Establish a Bar Date and claims process timeline.

A proposed order and examples of the proposed notice and claims form are attached. *See*

**RECEIVER'S MOTION FOR APPROVAL OF CLAIMS PROCESS AND BAR DATE**

Proposed Order; Exhibits A & B.

## II. FACTUAL BACKGROUND OF THE TBIS INITIAL COIN OFFERING

Numerous persons invested in TBIS's "initial coin offering" (ICO). TBIS conducted an unregistered offering of securities in the form of an ICO. The TBIS ICO was held using the Ethereum Network to issue ERC-20 tokens; investors purchased coins using either Ether, Bitcoin, other virtual currencies, or central bank-issued currencies. Because of the blockchain's pseudonymous nature, the victims' transactions are known but most victims' identities are not. Over 21,000 unique addresses currently hold tokens associated with the TBIS ICO.

TBIS issued its first virtual token, the Titanium Bar ("BAR"), during an ICO between November 21, 2017 and February 19, 2018. TBIS represented that BAR would be redeemable for future TBIS services—services purportedly still being developed. TBIS falsely represented that it had commercial relationships with many influential companies that would drive demand for these future TBIS services. TBIS claimed that purchasers would see the value of BAR appreciate based on this demand for future TBIS services. During the ICO, some buyers sold and transferred BAR to third parties.

On February 22, 2018, an unidentified party illicitly gained access to the virtual assets raised by TBIS, transferring virtually all of the raised funds away from TBIS control. In addition to the transfer of funds raised, the illicit transfers included a substantial portion of the BAR tokens—approximately 18 million BAR—that TBIS had held in reserve.

On the same day of the illicit funds transfer, TBIS announced their loss of control over the BAR tokens and disclosed a plan to issue a second virtual token, replacing the BAR (the "TBIS BAR disclamation announcement"). By this announcement, TBIS disclaimed the BAR tokens, rendering them essentially valueless. The TBIS announcement was widely reported on cryptocurrency news sites and online discussion forums. TBIS did not reclaim the now-defunct BAR. Subsequent to the TBIS

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
Tel: 213.896.2400
Fax: 213.896.2450

announcement, BAR market prices dropped to nearly zero. BAR holders continued to sell or transfer BAR to third parties, who were acquiring BAR despite the TBIS BAR disclamation announcement.

TBIS gave the replacement coin, TBAR, to all holders of BAR. TBIS began to issue and sell TBAR on February 23, 2018. Confusingly, TBIS continued to issue TBAR to new BAR holders, even where people acquired the BAR well after TBIS disclaimed the BAR tokens. TBIS continued to market its TBAR as worthy of acquisition. After TBIS distributed the TBAR coin, some TBAR holders sold or transferred TBAR to third parties.

On May 22, 2018, the SEC filed an emergency action against TBIS and other related principals alleging securities fraud, the sale of unregistered securities, and other violations of U.S. securities laws. The SEC made this action publicly known on May 29, 2018 via press release and publishing on the SEC website (the "<u>TBIS fraud disclosure</u>"). Almost immediately, TBAR market prices dropped to nearly zero.

## III.  DISCUSSION

The Receiver has come up with procedures for overseeing the administration of claims of creditors, investors who acquired unregistered securities from TBIS and certain investors otherwise harmed by TBIS's fraud. The Receiver will be responsible for reviewing and validating submitted claims. After the Receiver has reviewed and validated submitted claims, he will submit a separate motion seeking approval for the distribution of assets to claimants in amounts to be determined at a later date.

"[A] primary purpose of equity receiverships is to promote orderly and efficient administration of the estate by the district court for the benefit of creditors." *SEC v. Hardy*, 803 F.2d 1034, 1038 (9th Cir. 1986). District judges have extremely broad authority in determining appropriate administrative actions for equity receiverships, including claims administration. *Id* at 1037–38. Reasonable and fair procedures in administering claims are appropriate. *Id.* at 1038. However, "the rights of creditors of a

receivership must be balanced against the need for expeditious administration of the receivership; a district court in overseeing a receivership must 'make rules which are practicable as well as equitable.'" *Id.* at 1039 (*quoting First Empire Bank-New York v. FDIC*, 572 F.2d 1361, 1368 (9th Cir. 1978)).

### A. Eligible Claimants should be creditors, those investors who acquired unregistered securities from TBIS and certain other investors who suffered a loss caused by TBIS's fraud.

The Receiver proposes compensating TBIS's creditors, those investors who acquired unregistered securities from TBIS and certain other investors who suffered a loss caused by TBIS's fraud. TBIS's creditors should be eligible claimants, subject to a case-by-case determination of claim validity. As for victims of TBIS's securities fraud, securities fraud victims are those who suffered economic loss caused by misrepresentations. *See Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342–46 (2005). Determining loss causation depends on how the victim acquired the security. Initial purchasers (from the issuer) benefit from a statutory presumption of loss causation. *See* 15 U.S.C. § 77l. Subsequent purchasers must have loss actually caused by misrepresentations: courts will look at the value of the security if no misrepresentations had been made, the purchase price and date, the sale price and date, and whether disclosure of the fraud depressed the sale price. *See Dura*, 544 U.S. at 344–45. Thus, subsequent Purchasers who do not purchase the security from the issuer and who sell "before the relevant truth begins to leak out" are not victims of the fraud. *Id.* at 342. Finally, unlike those investors whose loss arises solely from TBIS's fraud, investors who purchased unregistered securities from TBIS benefit from a statutory presumption of loss causation. *See* 15 U.S.C. § 77l.

As a result of the presumption of loss causation being available to some investors but not others, there should be two classes of investor claimants: (1) those induced into purchasing BAR or TBAR, constituting unregistered securities, directly from TBIS

(collectively, the "Direct Purchasers"), and (2) those who purchased BAR or TBAR from someone other than TBIS (collectively, the "Secondary Market Purchasers") at a price inflated due to TBIS misrepresentations, and then who realized a loss in value caused by the TBIS fraud disclosure.

As a class, Direct Purchasers are entitled to a presumption of loss generally based on the difference between what they paid for the BAR or TBAR and the price they obtained when they sold same, or if they have not sold their BAR or TBAR, the current value of same., Accordingly, all Direct Purchasers should be eligible claimants because they (in addition to potentially being victims of TBIS's fraud) purchased an unregistered security directly from its issuer and would benefit from a rescissionary measure of damages. 15 U.S.C. § 77l(a).  Direct Purchasers who sold their tokens should, however, be limited to recovering actual damages; thereby excluding any Direct Purchasers who sold their tokens for more than the price they paid for same, after accounting for any reasonable and customary transactional costs.

On the other hand, the class of Secondary Market Purchasers must show that their loss was caused by TBIS's fraud.  As a result, those Secondary Market Purchasers who sold prior to the fraud disclosure—and who suffered loss based on market price fluctuations unrelated to any TBIS misrepresentations—should not be victims of the TBIS fraud. Based on the foregoing principle, Secondary Market Purchasers



**Figure 1**: TBAR USD price chart.

should be eligible claimants if they purchased prior to the TBIS fraud disclosure and held through the TBIS fraud disclosure. The TBIS tokens were valueless, because TBIS lacked the capabilities to develop the promised product for which the TBIS token would have been used. Any non-zero market price was entirely due to the TBIS fraud. This actual valuation of zero is reflected in the depressed market price immediately following the TBIS fraud disclosure. Thus, anyone who purchased prior to the fraud disclosure purchased at a price inflated due to the fraud and were damaged when their tokens' price to plummeted to zero (or near zero) subsequent to the fraud disclosure. *See infra* Fig.1.

However, certain Secondary Market Purchasers should be ineligible claimants regardless of whether they continue to hold BAR or TBAR. Specifically, Purchasers of BAR who purchased after the TBIS BAR disclamation announcement should be ineligible, because TBIS publicly renounced the value of those tokens. Persons who acquired these worthless tokens after TBIS informed the public of their worthlessness did so at their own risk and not in reliance on any TBIS misrepresentations. Moreover, any subsequent purchasers who sold prior to the fraud disclosure cannot have been damaged by the TBIS fraud and thus should be ineligible claimants.

Therefore, the Receiver proposes that claimants be categorized as follows:

Claimant Type A:  **Creditors**.

Claimant Type B:  **Direct Purchasers (**i.e., acquired BAR or TBAR, constituting unregistered securities directly from TBIS).

Claimant Type C:  Certain **Secondary Market Purchasers** of **BAR**. Persons that—
1. Purchased BAR from third parties prior to Feb. 22, 2018;
2. Held that BAR through Feb. 22, 2018;
3. Received TBAR from TBIS by virtue of their BAR holdings; and
4. Held that TBAR through May 29, 2018.

Claimant Type D:  Certain **Secondary Market Purchasers** of **TBAR**. Persons that—
1. Purchased TBAR from third parties prior to May 29, 2018; and

7
**RECEIVER'S MOTION FOR APPROVAL OF CLAIMS PROCESS AND BAR DATE**

2. Held that TBAR through May 29, 2018.

<u>Claimant Type E</u>:  **Ineligible claimants** that do not meet any of the above criteria. Examples of ineligible claimants are:

3. Secondary Market Purchasers of BAR selling that BAR before Feb. 22, 2018;
4. Purchasers of BAR on or after Feb. 22, 2018;
5. Purchasers of TBAR on or after May 29, 2018;
6. Recipients of TBAR given by TBIS based on BAR acquired on or after Feb. 22, 2018; and
7. Secondary Market Purchasers of BAR or TBAR selling their acquired TBAR before May 29, 2018.

A claimant may fit into multiple claimant types depending on their specific facts, and such claims will be apportioned accordingly for purposes of determining claim eligibility. Limiting eligible claimants to the above persons permits fair and reasonable compensation to those whom TBIS is liable for selling unregistered securities and/or damages causedby TBIS fraud; and accordingly, should be approved.

**B.    Internet-based electronic notice is fair, reasonable, and comports with due process for internet-based virtual token fraud victims.**

The Receiver will provide notice to claimants of the claims process in order to validate claims and identify the claimant class. The Receiver proposes using online, electronic notice of the claims process using media similar to that which TBIS employed to propagate its misrepresentations and effect its sale of unregistered securities.

A claims process must satisfy due process. Due process requires that a party must receive notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Internet-based notice is suitable for apprising parties when their involvement in a matter is predominantly internet based. *See SEC v. Arisebank*,

No. 3:18-cv-00186-M , 2019 WL 1796170 (N.D.Tex. Jan. 29, 2019) (Receiver's Motion for Approval of Claims Process and Proposed Bar Date) and Docket No. 100, Order Granting Motion (N.D. Tex. Feb. 1, 2019) (order approving claims process, notice procedures, and bar date) (approving receiver's electronic notice procedures for claimants involved in an initial coin offering); *see also Browning v. Yahoo! Inc.*, No. C04-01463, 2007 WL 4105971, at *4 (N.D. Cal. Nov. 16, 2007) (internet notice "particularly suitable" where claims involved "visits to Defendants' internet websites"); *Lundell v. Dell, Inc.*, No. CIVA C05-3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (electronically sent and internet-published notice satisfied due process).

      Here, internet-based notice is appropriate because TBIS primarily interacted with potential claimants via the internet. TBIS promoted its ICO through its website, internet news sites, and social media. Investors purchased TBIS tokens through electronic means, including an internet-based smart contract that automatically exchanged virtual currencies for TBIS BAR tokens. Almost all investors contributed funds in the form of internet-based cryptocurrencies. And the TBIS tokens themselves are entirely virtual. For all practical purposes, access to, and familiarity with, the internet is a prerequisite to owning virtual assets, like BAR and TBAR.  Finally, specific investors are not identifiable because almost all potential claimants are cloaked by blockchain-based pseudonymity. Under these circumstances, the Court should find that internet-based notice is the best method to reach TBIS claimants—claimants demonstrably accessing the internet and involved in online cryptocurrency and crypto-investor communities.

      The Receiver proposes multiple forms of notice. First, the Receiver should be authorized to send email or mail notice to those potential claimants for whom the Receiver has contact information; nearly 250 claimants have already submitted preliminary claims. Second, the Receiver should be authorized to publish notice of the claims process via the TBIS website (https://tbis.io/). Additionally, the Receiver should be authorized to publish the notice via the same channels through which TBIS originally

promoted its digital tokens: cryptocurrency and related online industry publications, online discussion forums, Telegram, and Twitter.

The notice will include the following:

8. An explanation of the TBIS fraud and circumstances under which it sold unregistered securities;
9. An explanation of who is eligible for compensation and the claims process;
10. The online portal web address for making a claim;
11. The deadline for submitting a claim (the "Bar Date");
12. Copies of the court order approving the claims process and distribution plan; and
13. An email address for correspondence to the Receiver.

If authorized, the content of the notice will be substantially similar to that in the attached example notice. *See* Exhibit A. This online notice process is fair and reasonable under the circumstances, comports with due process, and should be approved.

### C. Internet-based Claim Submission is Appropriate for Internet-based Activities.

The Receiver proposes receiving claims online, which is fair and reasonable given the exclusively online nature of the fraud and virtual tokens. If authorized, the Receiver will create a web portal for form-based submission. The process will validate claims and provide notice to claimants of the status of their claims, including grounds for denial of a claim, as appropriate. The web portal will include protections to prevent automated form submission by bots and other techniques that could increase the number of false claims. The Receiver will also establish an alternative means for filing claims for those individuals who establish that they are not reasonably able to use the online submission portal (e.g., government interference or censoring). Claimants requesting alternative submission of claims will be instructed to contact the Receiver at tbis@hklaw.com.

The claims form will solicit sufficient information to communicate with

1  claimants, validate claims, and conduct Office of Foreign Assets Control due diligence.
2  The Receiver will send all claimants confirmation of their successfully submitted claim.
3  For most claimants, the Receiver will be able to immediately determine the validity of
4  claims and inform claimants of their claim determination.

5        The claims form will also include certain consent and attestation provisions. First,
6  it will require consent to this Court's exclusive jurisdiction for any disputes related to the
7  claims. Second, the form will require claimants attest to the truth and correctness of the
8  submitted information under penalty of perjury. Third, the form will require each
9  claimant release the Receiver, the Receivership Estate, and their agents from any claims
10 the claimant has or may assert in excess of any approved distribution of available
11 Receivership funds. This release will prevent a claimant from later contesting a Claim
12 Determination or amount after completing the objection process. A similar release was
13 approved in a nearly identical case involving a receivership distributing funds to
14 claimants. *See SEC v. Arisebank*, No. 3:18-cv-00186-M (N.D. Tex. Feb. 1, 2019) (order
15 approving claims process, notice procedures, and bar date).  The content of the claims
16 form will be substantially similar to that in the attached example form and release. *See*
17 Exhibit B.  This online, largely automated claims process will conserve Receivership
18 resources, is fair and reasonable, and should be approved.

19     **D.**     **Validating Claims Using Blockchain Transactional Information is**
20            **Practicable, Efficient, and Accurate.**

21 The Receiver proposes validating claims based on claimant submissions and blockchain
22 transactional data. TBIS conducted its ICO on the Ethereum Network, which is a
23 publicly-viewable online ledgers distributed among a global network of computers,
24 theoretically impervious to alteration, and an accurate and immutable transaction
25 archive. The Ethereum Network stores transactional information which the Receiver and
26 Counsel can use to help determine the validity of claims and eligibility of most
27 claimants. Using a web-based form will permit automated validation for many claims,
28

and in some cases, even permit an immediate claim determination to be made for some claimants. The web portal will also solicit additional information from claimants with complicated transaction histories or involving cryptocurrency exchanges. However, the information needed to determine a claimant's eligibility is mostly available via the Ethereum Network used by TBIS.

For example, the Receiver knows the transaction quantities, dates, senders, and recipients of all BAR and TBAR issued by TBIS. Unfortunately, this information is also available to anyone via that same blockchain, creating a risk that bad actors will attempt to use this information to submit fraudulent claims. To prevent these sorts of fraudulent or duplicative claims, the Receiver will verify a claimant's control over an address using a purpose-built Ethereum ERC-20 "control" token (the "Control Token"). After a claimant enters sufficient information in the claims web portal, the Receiver will automatically send a Control Token to the claimant's Ethereum address. The web portal will instruct the Claimant to prove control over the claimed address by sending the Control Token back to the Receiver. Failure to prove control within a defined period will result in an automatic emailed notice to the claimant, denying the claim and stating the grounds for denial.

### E. Claimants Should have the Opportunity to Object to Claim Determinations.

The Receiver proposes that each claimant be given 30 days from the date the Receiver sends the Claim Determination to submit an objection. The objection should be emailed to the Receiver at tbis@hklaw.com on or before 11:59 pm (PST) on the date that is 30 days after the date the Receiver sent the Claim Determination, unless the Receiver has agreed to an alternative means of claim submission for the objecting claimant. The Receiver will receive and consider timely objections on a case-by-case basis and will communicate any changes to the original Claim Determination in a timely manner.

Holland & Knight LLP
400 South Hope Street, 8th Floor
Los Angeles, CA  90071
Tel: 213.896.2400
Fax: 213.896.2450

**F.    Proposed timeline and 90-Day Claims Window.**

In order to obtain certainty regarding the number and aggregate amount of claims and to allow for a final distribution of all Receivership funds, the Receiver proposes a claims Bar Date of 11:59 p.m. (Pacific Time) 90 calendar days following publishing of the Claims Process Notice. An identical claims period was found reasonable and fair in a similar case involving an unknown class of cryptocurrency contributors. *See Arisebank*, No. 3:18-cv-00186-M, ECF No. 98. Except for claims the Receiver has determined to be subject to an alternative method of submittal and disposition, claims not properly submitted to the Receiver by the Bar Date will be barred.

Accordingly, the Receiver proposes the following timeframe for implementing the claims process:

**Day 1**
- Plan Approval
- Receiver Develops and Tests Claims Web Portal

**Day 30**
- Web Portal Implemented
- Claims Process and Distribution Plan Notice Published

**Day 120**
- Claims Window Closes

**Day 130**
- Deadline to Cure Deficiencies
- Receiver Completes Manual Claims Validation as Necessary
- Receiver Checks Validated Claimants Against OFAC's SDN List

**Day 135**
- Victims' Share Calculation Completed (subject to court approval)
- Ether Purchased for Distribution (subject to court approval)
- Victims' Compensation Distributed (subject to court approval)

**Dissolution**
- Supplemental Distribution

### G. Distribution of Assets

Before the Bar Date, the Receiver will propose a claimant compensation distribution plan to be implemented after the Bar Date and after resolving all objections.

## IV. CONCLUSION

For the reasons stated above, the Receiver respectfully requests that the Court enter an Order approving the following components of the claims process:

(i) The eligible claimant classes;

(ii) Method of notice;

(iii) Method of receiving claims;

(iv) Method of claim validation;

(v) Method of handling claims determination objections;

(vi) Bar Date and Claims Process timeframe; and

(vii) Directing such other and further relief as the Court deems appropriate.

Dated: July 28, 2020.                    Respectfully submitted,

/s/ *Kristina S. Azlin*

Kristina S. Azlin
Jose Casal (*pro hac vice*)
Holland & Knight LLP

*Attorneys for Josias N. Dewey, Court-appointed Receiver for TBIS*

# PROOF OF SERVICE

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 400 S. Hope Street, 8th Floor, Los Angeles, CA 90071.

On **July 28, 2020**, I served the document described as Receiver's **RECEIVER'S NOTICE OF MOTION AND MOTION FOR APPROVAL OF CLAIMS PROCESS AND BAR DATE; [*PROPOSED*] ORDER** on the interested parties in this action as follows:

[X] (**BY Electronic Transfer to the CM/ECF System**) In accordance with Federal Rules of Civil Procedure 5(d)(3) and Local Rule 5-4, I uploaded via electronic transfer a true and correct copy scanned into an electronic file in Adobe "pdf" format of the above-listed document(s) to the U.S. District Court Central District of California's Electronic Case Filing (CM/ECF) system on this date.

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on **July 28, 2020**, Los Angeles, California.

/s/*Kristina S. Azlin*
Kristina S. Azlin