HOLLAND & KNIGHT LLP
Kristina S. Azlin (SBN 235238)
Samuel J. Stone (SBN 317013)
kristina.azlin@hklaw.com
sam.stone@hklaw.com
400 South Hope Street, 8th Floor
Los Angeles, California 90071
Telephone: 213.896.2400
Facsimile: 213.896.2450

Jose A. Casal (*pro hac vice*)
jose.casal@hklaw.com
701 Brickell Avenue. Suite 3300
Miami, Florida 33131
Telephone: 305.789.7736

*Attorneys for Josias Dewey, Court-appointed
Receiver for Receivership Entities*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>TITANIUM BLOCKCHAIN INFRASTRUCTURE SERVICES, INC.; EHI INTERNETWORK AND SYSTEMS MANAGEMENT, INC. aka EHI-INSM, INC.; and MICHAEL ALAN STOLLERY aka MICHAEL STOLLAIRE,<br><br>Defendants. | Case No. 18-4315 DSF (JPRx)<br><br>**THIRD INTERIM FEE APPLICATION OF HOLLAND & KNIGHT LLP, AS COUNSEL TO RECEIVER, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES; CERTIFICATION OF COUNSEL IN SUPPORT THEREOF; [*PROPOSED*] ORDER**<br><br>**[FRCP 66; L.R. 66-7]**<br><br>Date: September 12, 2022<br>Time: 1:30 pm<br>Ctrm: 7D<br>Judge: Hon. Dale S. Fischer |

1

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD**:

PLEASE TAKE NOTICE that on September 12, 2022, at 1:30 pm, or as soon thereafter as the matter may be heard before the Honorable Dale S. Fischer, in Courtroom 7D of the United States District Court, Central District of California, Western Division, 350 West 1st Street, 6th Floor, Los Angeles, California, 90012, Holland & Knight LLP ("Counsel" or "H&K"), counsel to Josias Dewey, as Court-appointed Receiver (the "Receiver") for the estates of Defendant Titanium Blockchain Infrastructure Services, Inc. and its subsidiaries and/or affiliates (collectively, the "Receivership Entities"), will and hereby does submit this third interim fee application (the "Application").

This Application is submitted pursuant to paragraphs XI(F) and XVII of this Court's Order Appointing Permanent Receiver, entered May 30, 2018 (the "Permanent Receivership Order"), Rule 66 of the Federal Rules of Civil Procedure, and Local Rule 66-7. This Application is made following the conference of counsel pursuant to Local Rule 7-3 which took place beginning in June 2022 and continued through July 2022.

This Application is based upon this Notice of Application and Application, the Arguments and Authorities in Support of Fee Application incorporated therein, the Certification of Counsel, all papers and records on file herein, and such other matters as may be presented to the Court at or before the hearing on this Application.

Dated: August 10, 2022

Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/ *Kristina S. Azlin*
/s/ *Jose A. Casal*

Kristina S. Azlin (SBN 235238)
Jose A. Casal (*pro hac* vice)
Samuel J. Stone (SBN 317013)

*Attorneys for Josias Dewey, Court-appointed Receiver for Receivership Entities*

# TABLE OF CONTENTS

I.     SUMMARY OF FEE REQUEST ...................................................3

II.    STANDARDIZED FUND ACCOUNTING REPORT ................................5

III.   CASE STATUS ........................................................................5

IV.    BACKGROUND ......................................................................10

V.     SUMMARY OF SERVICES PROVIDED ..................................14

VI.    FEE APPLICATION ...............................................................17

VII.   POINTS AND AUTHORITIES IN SUPPORT OF
       FEE APPLICATION ...............................................................18

VIII.  CONCLUSION.......................................................................21

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Drilling & Exploration Corp. v. Webster*,
    69 F.2d 416 (9th Cir. 1934) ................................................................. 19

*Gaskill v. Gordon*,
    27 F.3d 248 (7th Cir. 1994) ................................................................. 20

*In Re McGann Mfg. Co.*,
    188 F.2d 110 (3d Cir. 1951) ................................................................ 19

*Quilling v. Trade Partners, Inc.*,
    572 F.3d 293 (6th Cir. 2009) ............................................................... 19

*SEC v. Elliot*,
    953 F.2d 1560 (11th Cir. 1992) (rev'd in part on other grounds, 998
    F.2d 922 (11th Cir. 1993)) ................................................................. 19

*SEC v. Hardy*,
    803 F.2d 1034 (9th Cir. 1986) ............................................................. 18

*SEC v. Nationwide Automated Sys. Inc.*,
    CV 14-07249 ...................................................................................... 19

*SEC v. Small Bus. Cap. Corp.*,
    No. 5:12-CV-03237 EJD, 2014 WL 1901257 (N.D. Cal. May 9,
    2014) ........................................................................................... 19–20

*SEC v. W.L. Moody & Co., Bankers (Unincorporated)*,
    374 F.Supp. 465 (S.D. Tex. 1974) ...................................................... 20

*SEC v. Wang*,
    2015 WL 12656904 (C.D. Cal., Feb. 17, 2015, No. CV 13-7553 JAK
    (SS)) ................................................................................................. 19

*Southwestern Media, Inc. v. Rau*,
    708 F.2d 419 (9th Cir. 1983) ............................................................... 20

*United States v. Code Prods. Corp.*,
    362 F.2d 669 (3d Cir. 1966) ........................................................... 19–20

**Statutes**

Exchange Act Section 10(b) ........................................................................12–13

Securities Act of 1933 Section 17(a) [15 U.S.C. §§ 78j(b) and 78o(a)] ....................12

Securities Act Sections 5(a), 5(c), and 17(a) ........................................................12–13

**Other Authorities**

17 C.F.R. § 240.10b-5 (Rule 10b-5) ..................................................................12

Federal Rules of Civil Procedure Rule 66 ...........................................................2–3

Local Rule 7-3...........................................................................................2

Local Rule 66-7.......................................................................................2–3

### THIRD INTERIM FEE APPLICATION OF HOLLAND & KNIGHT LLP, AS COUNSEL TO RECEIVER, FOR ALLOWANCE OF COMPENSATION AND REIMBURSEMENT OF EXPENSES

Pursuant to paragraphs XI(F) and XVII of this Court's Order Appointing Permanent Receiver, entered May 30, 2018 (the "Permanent Receivership Order") (Dkt. 48), Rule 66 of the Federal Rules of Civil Procedure, and Local Rule 66-7, Holland & Knight LLP ("Counsel" or "H&K"), counsel to Josias Dewey, as Court-appointed Receiver (the "Receiver") for the estates of Defendant Titanium Blockchain Infrastructure Services, Inc. ("TBIS") and its subsidiaries and/or affiliates (collectively, the "Receivership Entities"), hereby submits this third interim fee application (the "Application").

In support of this Application, H&K respectfully states the following:

### I.     SUMMARY OF FEE REQUEST

1.     This interim fee application covers the period from January 1, 2020 through August 11, 2021 (the "Third Application Period")[1] and is submitted in accordance with the Permanent Receivership Order, the Local Rules of this Court, and the Billing Instructions for Receivers in Civil Actions Commenced by the United States Securities and Exchange Commission (the "Billing Instructions").

2.     On April 4, 2019, this Court entered an Amended Order (Dkt. 80) Partially Granting First Interim Fee Application of Holland & Knight LLP, as Counsel to the Receiver, for Allowance of Compensation and Reimbursement of Expenses (the "First Interim Fee Application"), allowing and approving H&K's fees and expenses for the period of May 23, 2018 through June 22, 2018 (the "First Application Period"), on an interim basis, in the amounts of $52,828.49 for attorneys' fees incurred by H&K and $66,451.25 for expenses (which reflected the amount invoiced for forensic services rendered by Kroll Cyber Security), for a total of $119,279.74 (the "First Interim

---

[1] The anticipated Fourth Application Period will run from August 12, 2021 through the execution of the Distribution Plan.

Allowance").[2]  H&K received full payment of the First Interim Allowance (the "First Interim Payment").  On September 8, 2021, this Court entered an Order (Dkt. 106) Granting Second Interim Fee Application of Holland & Knight LLP, as Counsel to the Receiver, for Allowance of Compensation and Reimbursement of Expenses (the "Second Interim Fee Application"), allowing and approving H&K's fees and expenses for the period of June 23, 2018 through December 31, 2019 (the "Second Application Period"), on an interim basis, in the amounts of $138,865.27 for attorneys' fees incurred by H&K and $16,734.49 for expenses (which included the amount invoiced for accounting services rendered by Grobstein Teeple LLP), for a total of $155,599.76 (the "Second Interim Allowance").  H&K received full payment of the Second Interim Allowance (the "Second Interim Payment").  Since the Second Application Period, Counsel has rendered additional services to the Receiver for the benefit of the Receivership Entities, as discussed more fully herein.

3.     Through this Application, H&K seeks approval, on an interim basis, of $155,858.40 in fees and $109,815.05 in expenses (inclusive of $4,086.48 for forensic services rendered by Kroll Cyber Security, LLC ("Kroll"), $102,392.50 for claims administration services rendered by RCB Fund Services LLC ("RFS"), $6,689.00 for claims noticing services rendered by Fleishman-Hillard, Inc. ("Fleishman"), and other administrative expenses invoiced to H&K) for the Third Application Period, for a total of **$265,673.45** (the "Fees").

---

[2] Pursuant to paragraph XVII of the Permanent Receivership Order, fees and costs for the Receiver and all others retained to assist him in the administration and liquidation of the estate were capped at $125,000 for the initial 30 days of the receivership (the "Fee Cap").  H&K actually incurred $144,369.52 in fees and $72,171.51 in expenses, for a total of $216,541.03, during the First Application Period, but limited that application to $125,000 pursuant to the Fee Cap.  H&K does not intend to make an application for the remaining $91,541.03 in fees incurred over the Fee Cap during the First Application Period.

THIRD INTERIM FEE APPLICATION OF COUNSEL FOR RECEIVER

## II.     STANDARDIZED FUND ACCOUNTING REPORT

4.     Attached as **Exhibit A** is the Standardized Fund Accounting Report (SFAR) for the Receivership Entities for the period from July 1, 2021 through March 31, 2022 (the "<u>SFAR Reporting Period</u>").[3]

## III.     CASE STATUS

5.     <u>Cash On Hand</u>: The amount of cash on hand in the Receiver's bank account is $20,280.84 as of the end of the SFAR Reporting Period.  These funds were received by taking control of TBIS's bank accounts held at US Bank ($58,583.45) and JPMorgan Chase ($252,208.40).

<u>Other Assets</u>: In addition to the cash on hand, the Receiver has also taken possession, or has caused third-party custodians to freeze, the following assets:

| Asset | Units (if applicable) | Unit Value (as of 12/31/2018) | Aggregate Value (as of 12/31/2018) | Unit Value (as of 03/31/2022, end of SFAR Period) | Aggregate Value (as of 03/31/2022, end of SFAR Period) |
|---|---|---|---|---|---|
| **Bitcoin (BTC)** | 113.471 | $3,819.7400 | $433,429.72 | $45,538.68 | $5,167,319.56 |
| **Bitcoin SV (BSV)** | 1.55416 | $87.4500 | $135.91 | $94.54 | $146.93 |
| **Ether (ETH)** | 2151.37 | $136.8200 | $294,350.44 | $3,281.64 | $7,060,021.85 |
| **Zcash (ZEC)** | 7.9046 | $58.6000 | $463.21 | $178.02 | $1,407.18 |
| **Litecoin (LTC)** | 4358.11 | $81.6100 | $355,665.36 | $123.72 | $539,185.37 |
| **Bitcoin Cash (BCH)** | 0.0004694 | $164.8500 | $0.08 | $384.04 | $0.18 |
| **Electroneum (ETN)** | 21035514 | $0.0076 | $160,332.69 | $0.006191 | $130,230.87 |
| **OMG (OMG)** | 51.5600014 | $1.4316 | $73.81 | $5.49 | $283.06 |

---

[3]  While the Third Application Period runs through August 11, 2021, the SFAR Reporting Period runs through the end of the most recent quarter, providing a more accurate and complete picture of the current case status.

THIRD INTERIM FEE APPLICATION OF COUNSEL FOR RECEIVER

| Asset | Units (if applicable) | Unit Value (as of 12/31/2018) | Aggregate Value (as of 12/31/2018) | Unit Value (as of 03/31/2022, end of SFAR Period) | Aggregate Value (as of 03/31/2022, end of SFAR Period) |
|---|---|---|---|---|---|
| **Computer equipment, televisions, phones (est)** | | | $5,000.00 | | $2,000.00 |
| | | **Total** | **$1,249,451.22** | | **$12,900,594.99[4]** |

6.     The Receiver has established multiple cryptocurrency wallets to hold the cryptocurrencies listed above and is either (i) in possession of the private keys associated with these wallets, or (ii) has caused a third party custodian to freeze such assets.  As of the end of the SFAR Reporting Period, and based on values taken from a market aggregator, the value of the cryptocurrency assets held by or for the benefit of the Receivership Estate is approximately $12,898,594.99. This figure should be taken with caution because the value of cryptocurrency assets fluctuates rapidly, and the markets for some cryptocurrencies can be opaque and illiquid, and subject to market manipulation. Furthermore, some assets, like Electroneum (ETN), may constitute unregistered securities, making it difficult, or impossible, for the Receiver to liquidate to fiat currency.

7.     Pursuant to the Receiver's November 1, 2019 Motion for Leave to Partially Liquidate Assets (Dkt. 91) (the "Partial Liquidation Motion"), and the Court's November 22, 2019 Order granting the Partial Liquidation Motion (Dkt. 93), the Receiver obtained authorization from the Court to partially liquidate the cryptocurrency

---

[4] The total value of the cryptocurrency assets is extremely variable due to the high volatility of the market. As of June 1, 2022, the total approximate value of the cryptocurrencies listed above is $7,664,102.75.

THIRD INTERIM FEE APPLICATION OF COUNSEL FOR RECEIVER

assets listed above in order to pay current and future expenses for which the Receiver had insufficient cash on hand.

8.   Expenses: The Receiver has incurred administrative expenses as a result of his efforts to marshal and preserve the assets of the Receivership.  Expenses for the Third Application Period were advanced by H&K, Kroll, RFS, and Fleishman, as set forth in attached **Exhibit E**.  Lastly, the Receivership has advanced certain ordinary course expenses, such as costs incurred in connection with server hosting fees, incurred by the Receiver in the aggregate amount of $2,916.00 in administering the Receivership Entities.

9.   Creditor Claims:  As set forth in the Receiver's Notice to Court Regarding Status of Claims Process and Claims Bar Date, filed on March 22, 2021 (the "Claims Process Status Notice") (Dkt. 102), the creditor claims process is underway pursuant to the procedures developed by the Receiver and approved by this Court's August 21, 2020 Order Approving Claims Process and Bar Date (Dkt. 96) for overseeing the administration of claims of creditors, investors who acquired unregistered securities from TBIS and certain investors otherwise harmed by TBIS's fraud.

10.   As detailed in the Claims Process Status Notice, the Receiver, claims administrator RFS, and Counsel have worked diligently to test, validate, and ultimately deploy a first-of-its-kind automated validation-based claims process system (the "Claims Portal").  The Claims Portal involves using the record of the fraudulent transaction – the sale of unregistered securities represented by virtual ERC-20 cryptocurrency tokens which exist on the public Ethereum blockchain network ("Ethereum Network") – to validate the legitimacy of claims and prevent fraudulent or duplicative claims.  The Ethereum Network is the decentralized transaction ledger on which Ether, one of the world's most popular cryptocurrencies, exists.  The Ethereum Network reflects the transactions occurring insofar as it is, in and of itself, a ledger of transactions.

11.   Pursuant to the Court's December 8, 2020 Order Appointing a Claims Administrator (Dkt. 100), the Receiver engaged RFS as claims administrator for

purposes of effectuating the Court's August 21, 2020 Order approving the claims process.  On December 15, 2020, the Court granted TBIS's and the Securities and Exchange Commission's ("SEC") Joint Stipulation to Extend Claims Bar Date (Dkt. 101). Pursuant to that Order, the Court established that the claims period for potential claimants of the Receivership Entities would run for 180 calendar days following publication of the Claims Process Notice (the "Notice"). Any claims submitted after 11:59 p.m. Pacific Time on the date 180 calendar days following initial publication of the Notice would be barred (the "Bar Date").

12.     On February 12, 2021, the Receiver published the initial Notice of the Claims Process and Bar Date on PR Newswire and  Twitter, thus establishing the Claims Bar Date as August 11, 2021.  In addition to the initial Notice, the Receiver has provided direct email notices to potential claimants whose email addresses are known and has re-published the Notice on additional occasions, through multiple channels.  The initial round of publication and direct emails reached a wide audience and resulted in a number of claims being filed, as evidenced by both the number of claims authenticated and submitted to date and the geographic diversity of the claimants.  The Receiver made subsequent publications of the Notice throughout the claims period, including on PR Newswire, Coin Telegraph, and Twitter.

13.     The Claims Portal went live on February 27, 2021 and remained open until 11:59 p.m. Pacific Time on the August 11, 2021 Bar Date.  The Receiver has been reviewing and validating submitted claims and responding to inquiries from claimants and potential claimants.

14.     As of June 1, 2022, 669 claims submitted through the Claims Portal cleared validation, meaning that the claims process deemed them to be legitimate claims arising from purchase or acquisition of unregistered TBIS securities.  An additional 337 claims had been created, but not yet finalized, meaning that claimants still had to take additional

THIRD INTERIM FEE APPLICATION OF COUNSEL FOR RECEIVER

steps to finish the claims submission (e.g., upload documentation)—55 of these claims were deemed to be duplicates.[5]

15.     Now that the Bar Date has passed, the Receiver has begun work on reviewing and validating submitted claims.  Of those claims that cleared validation, the Receiver has sent out 646 notices of determination to claimants. In anticipation of the next step of this process, the Receiver submitted its proposed Distribution Plan (Dkt. 107), which the Court subsequently granted on May 9, 2022 (Dkt. 109). Once all claimants have received a notice of determination, the Receiver will begin distributing the assets pursuant to the plan.

16.     The Receiver has taken substantial steps in furtherance of administrating the Estate during this time, including but not limited to establishing a claims administration process among the first of its kind and moving the Court for approval of the same, setting a Claims Bar Date and giving notice to the Parties and public of the Claims Bar Date and claims process, publishing (and re-publishing) information about the claims administration process, creating a public-facing webpage and portal for potential creditors and victims of the fraud described herein, overseeing professionals engaged in administration and validation of claims, and actually opening the claims period, communicating with claimants who have questions about their claim submission or difficulties validating their address, coordinating with tax advisors regarding the Receivership's tax liabilities, collaborating with foreign counsel and cryptocurrency exchanges regarding stolen assets.

17.     The Receiver has negotiated with additional third parties, as well as the Defendant, with respect to certain cryptocurrency assets that were transferred from a wallet owned by TBIS to a wallet owned by a third-party and hosted by Coinbase. This cryptocurrency is the property of TBIS and therefore should be transferred to the Receivership. The Receiver successfully negotiated with all third-parties involved,

---

[5] The Receiver can provide updated information if needed at the time of hearing or reply.

THIRD INTERIM FEE APPLICATION OF COUNSEL FOR RECEIVER

including Defendant, to enter into a stipulation releasing the cryptocurrency to the Receivership, which was approved pursuant to the Court's April 10, 2019 Order Granting Stipulation and Request for Modification of Asset Freeze To Allow Release of Frozen Assets (Dkt. 82).

18.     The Receiver has, and continues to, pursue the recovery of certain cryptocurrency assets (approximately 477.647 Ethereum and 38.75387 Bitcoin, valued at approximately $2,352,166.36 as of the end of the SFAR Reporting Period) that were stolen from a wallet owned by TBIS and transferred to a wallet owned by a third-party and hosted by HitBTC (an offshore cryptocurrency exchange which, according to its website, was headquartered in Hong Kong but is now operating out of Chile and the Seychelles) (the "HitBTC Crypto"). The Receiver, using certain forensic cryptocurrency software tools, was able to trace the HitBTC Crypto through a series of complex transfers and, ultimately, was able to identify the individual owner of the wallet. The Receiver successfully negotiated with HitBTC to freeze the HitBTC Crypto (which, as of the date hereof, appears to remain frozen on the exchange), but despite repeated attempts to secure the transfer of the HitBTC Crypto to the Receivership (including filing suit through local counsel in Hong Kong to order HitBTC to transfer the HitBTC Crypto to the Receivership) HitBTC ceased communications with the Receiver (and its various counsel). The Receivership continues to pursue recovery of the HitBTC Crypto and has established communications with counsel in the Seychelles to explore remedies it may seek in that jurisdiction.

## IV.     **BACKGROUND**

19.     On May 22, 2018, the Securities and Exchange Commission filed a complaint against Defendants Titanium, EHI Internetwork and Systems Management, Inc., also known as EHI-INSM, Inc.("EHI"), and Michael Alan Stollery, also known as Michael Stollaire (collectively "Defendants"), along with an application for the appointment of a receiver for the Receivership Entities.

20.     The Court concluded that the appointment of a receiver in this action was necessary and appropriate for the purposes of marshaling and preserving all assets, tangible and intangible, that are owned, controlled or possessed by the Receivership Entities, and accordingly, on May 23, 2018, the Court entered a Temporary Restraining Order (the "TRO") and Orders (1) Freezing Assets; (2) Prohibiting the Destruction or Alteration of Documents; (3) Granting Expedited Discovery; (4) Requiring Accountings; and (5) Appointing a Temporary Receiver (the "Temporary Receivership Order") (Dkt. 2), appointing Josias N. Dewey as temporary receiver for the Receivership Entities. On May 24, 2018, all Defendants were served with the summons, complaint, TRO, and Temporary Receivership Order.  (Dkt. 49, 50, 51.)

21.     On May 30, 2018, the Court entered the Permanent Receivership Order (together with the Temporary Receivership Order, collectively, the "Receivership Order") (Dkt. 48).  The Defendants consented to the entry of the Permanent Receivership Order (Dkt. 47.)

22.     On June 6, 2018, the Court entered orders approving the Receiver's decision to employ H&K as legal counsel and Kroll as a forensic and investigative consultant, to assist him in carrying out his duties as the Receiver.  H&K and Kroll began performing services for the Receiver on or about May 23, 2018.

23.     As set forth in more detail in the Receiver's Initial Status Report for Receivership Estate of Titanium Blockchain Infrastructure Services, Inc., filed on June 25, 2018 (the "Initial Status Report"), the Receiver and his advisors focused most of their initial efforts on investigating, identifying, collecting, and preparing an inventory of assets of the Receivership Entities. (Dkt. 57.)  The principal assets recovered include cryptocurrency, U.S. currency, electronic data, and physical assets such as computer equipment.

24.     On May 24, 2018, the Receiver and his legal counsel, together with the assistance of Kroll, were able to seize and search computer equipment, mobile phones and other electronic devices belonging to the Receivership Entities and interview Mr.

Stollery and certain of his associates at their offices in Sherman Oaks, California and Springfield, Oregon. (Dkt. 57.)

25.    Based on information gained through the search and interviews, the Receiver identified and took control of certain cryptocurrency assets. In addition, the Receiver collected other assets at the Sherman Oaks site and from an office site in Springfield, Oregon that had been leased on behalf of Titanium. (Dkt. 57.)

26.    The Initial Status Report and the First Interim Fee Application provide additional detail on the Receiver's initial efforts and actions taken in order to identify and secure assets of the Receivership and to work on identifying additional assets for recovery. (Dkt. 57, 76.)

27.    On May 10, 2019, the SEC reached bifurcated settlements with EHI and Stollaire, which were signed and filed with the Court (Dkt. 83 and 84 respectively), whereby EHI and Stollaire consented, without admitting or denying the allegations of the complaint, to the entry of judgments on all claims against them and to the issuance of permanent injunctions against them on those claims, as well as to the issuance of a permanent injunction enjoining Stollaire from directly or indirectly, participating in the offering of digital or other securities. Pursuant to the terms of the bifurcated settlements, EHI and Stollaire agreed that the amounts of disgorgement and civil penalty they must pay shall be determined by the Court upon motion of the SEC, assuming no further settlement can be reached with the SEC as to those amounts.

28.    On May 14, 2019, the Court entered its Judgment as to Defendant EHI, which, among other things, (i) permanently restrains and enjoins EHI from violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. §§ 78j(b) and 78o(a)] and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78o(a)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5]; and (ii) orders EHI to pay disgorgement, prejudgment interest thereon, and a penalty in amounts to be determined by the Court upon motion of the SEC (Dkt. 86). EHI consented to such Judgment. (Dkt. 84.)

29.     On May 14, 2019, the Court entered its Judgment as to Defendant Stollaire, which, among other things, (i) permanently restrains and enjoins Stollaire from violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 thereunder; (ii) permanently restrains and enjoins Stollaire from directly or indirectly, including, but not limited to, through any entity owned or controlled by Stollaire, participating in the offering of digital or other securities, provided, however, that such injunction shall not prevent Stollaire from purchasing or selling digital or other securities for himself or his own personal account; and (iii) orders Stollaire to pay disgorgement, prejudgment interest thereon, and a penalty in amounts to be determined by the Court upon motion of the SEC (Dkt. No. 87).  Stollaire consented to such Judgment. (Dkt. 83.)

30.     On May 22, 2019, the Receiver executed a Consent of Defendant Titanium Blockchain Infrastructure Services, Inc. (Dkt. 89), consenting to the entry of a Judgment against TBIS that permanently restrains and enjoins TBIS from violations of Sections 5(a), 5(c), and 17(a) of the Securities Act and Section 10(b) of Exchange Act and Rule 10b-5 thereunder; (b) orders TBIS to pay disgorgement, prejudgment interest thereon, and a penalty in amounts to be determined by the Court upon motion of the SEC.  The Court entered its Judgment as to Defendant TBIS on May 23, 2019 (Dkt. 90).

31.     Pursuant to the Receiver's November 1, 2019 Partial Liquidation Motion (Dkt. 91), and the Court's November 22, 2019 Order granting the Partial Liquidation Motion (Dkt. 93), the Receiver obtained authorization from the Court to partially liquidate the cryptocurrency assets listed in Section III above in order to pay current and future expenses for which the Receiver had insufficient cash on hand.

32.     On July 28, 2020 the Receiver submitted a Motion for the Court to approve his proposed Claims Process and Bar Date (Dkt. 94), which included categorizing a list of eligible claimants, providing internet-based notice to victims of the fraud, submitting claims and validating them using blockchain token confirmation system. The Court granted the Motion in all respects (Dkt. 96).

33.     The Receiver also moved the Court to approve RFS as its claim administrator (Dkt. 97), and it was accordingly granted (Dkt. 101).

34.     Given the complexities of this novel claims process, in November 2020, the Receiver, TBIS, and the SEC entered into a joint Stipulation to extend the Bar Date by a period of 90 days (Dkt. 98). The Court granted the relief the following month (Dkt. 101).

35.     As set forth in more detail in the Receiver's Notice to Court Regarding Status of Claims Process and Claims Bar Date, filed on March 22, 2021 (the "Claims Status Report"), the Receiver and his advisors developed and launched the claims portal, distributed notice of the Claims Process and Bar Date to victims, and validated several hundred initial claims (Dkt. 102).

36.     On September 8, 2021, this Court entered an Order (Dkt. 106) granting the Second Interim Fee Application (Dkt. 103), allowing and approving H&K's fees and expenses for the period of June 23, 2018 through December 31, 2019.

37.     Lastly, on April 5, 2022, the Receiver submitted his proposed distribution plan (Dkt. 107), which the Court approved on May 9, 2022 (Dkt. 109).

## V.     <u>SUMMARY OF SERVICES PROVIDED</u>

38.     H&K has continued to assist the Receiver with all aspects of his duties in this case during the Third Application Period, including continued work on investigating, identifying, collecting, and preparing an inventory of assets of the Receivership Entities including cryptocurrency, U.S. currency, electronic data, and physical assets such as computer equipment, negotiations with third parties to stipulate to the recovery of additional cryptocurrency assets, and initial work on developing claims administration and distribution procedures.

39.     Additional actions in which H&K has assisted the Receiver include, but are not limited to, the following:

        a.     Establishing a Receivership website (http://tbis.io) and an email address (TBIS@hklaw.com) so that TBIS's investors and other creditors can receive information pertaining to the Receivership;

b.      Identifying cryptocurrency wallets and/or accounts controlled by the Defendants containing various cryptocurrencies (bitcoin, Bitcoin Cash, Ether, Litecoin, Dash, Electroneum, ZCash, BAR and TBAR), and either transferring such cryptocurrency to wallets controlled by the Receiver or causing third party custodial agents to freeze such accounts;

c.      Taking control of TBIS's U.S. Bank account and having the entire account balance transferred to an account established by the Receiver;

d.      Taking control of Titanium's JPMorgan Chase Bank account and requesting that the entire account balance be transferred to an account established by the Receiver;

e.      Securing access to Mr. Stollery's safe deposit box and the retrieval of relevant information and assets from same;

f.      Reviewing TBIS's provisional patent application and GitLab account, and conducting telephone interviews with TBIS's chief technology officer, to evaluate the current value of intellectual property and TBIS as a going concern;

g.      Engaging Kroll to inventory and image computers and phones collected from TBIS's offices in Sherman Oaks, California, and Springfield, Oregon;

h.      Interviewing TBIS's chief operating officer regarding business operations and matters pertaining to theft of virtual currencies from the Defendant TBIS;

i.      Obtaining information from special agents with the United States Secret Service and Federal Bureau of Investigations regarding the theft of virtual currencies from the Defendant TBIS;

j.      Securing personal property owned or leased by TBIS at both of its offices;

k.      Changing the locks at both commercial offices of Defendant TBIS;

l.      Negotiating with commercial landlords to secure the termination of TBIS's leases;

m.      Serving written notices on cryptocurrency exchanges and other third parties to locate additional assets, including certain overseas exchanges;

n.      Analyzing payroll and employment matters, including status of employment tax payments;

o.      Terminating the employment of employees of Defendant TBIS;

p.      Communicating with hundreds of prospective claimants about their potential claims and answering their questions;

q.      Establishing a first-of-its-kind claims process that involves an semi-automated method of validating certain claims by utilizing publicly available information on the Ethereum blockchain;

r.      Seeking, engaging and directing local counsel in Hong Kong and the Seychelles to pursue the recovery of the HitBTC Crypto;

s.      Engaging the services of, and work closely with, RFS to assist the Receiver, and its counsel, in the claims, validation and distribution process, including the development of a unique electronic claims portal, allowing the Receiver to reduce the time necessary to review and process a claim (as well as solving certain unique challenges in confirming claims pertaining to transactions that took place on a pseudo-anonymous basis on a blockchain);

t.      Analyzing and troubleshooting hundreds of claim applications and questions submitted through the claim application portal;

u.      Updating the Receiver's website with docket entries and claims notices; and

v.      Administering and drafting the Motion to Approve Bar Date and Claims Process (Dkt. 94), Motion to Extend Bar Date (Dkt. 98), Motion for

Approval to Appoint Claims' Process Administrator (Dkt. 97), Receiver's

Status Notice Regarding Claims Bar Date and Claims Process (Dkt. 102).

40.     Each of these tasks was reasonably necessary to identify and secure assets

of the Receivership, to work on identifying additional assets for recovery, and to begin

work on developing the procedures for overseeing the administration and payment of

claims of creditors, investors who acquired unregistered securities from TBIS and

certain investors otherwise harmed by TBIS's fraud.

## VI.     FEE APPLICATION

41.     During the Third Application Period, H&K professionals provided services

to the Receiver for the benefit of the Receivership Entities with a value of at least

$155,858.40 and incurred reimbursable expenses in the amount of $109,815.05,[6] for a

total of $265,673.45 in fees and expenses.  Through this Application, H&K requests

entry of an Order approving the Fees on an interim basis.

42.     This Application is the third Interim Fee application that H&K has

submitted in this matter.  Below is a summary of prior fees and expenses requested,

allowed, and paid to H&K to date:

| Application; Date Filed | Period Covered | Requested | | Allowed | | Paid | |
|---|---|---|---|---|---|---|---|
| | | Fees | Expenses | Fees | Expenses | Fees | Expenses |
| First Interim; 3/1/2019 (Docket # 76) | 5/23/2018 – 6/22/2018 | $52,828.49[7] | $72,171.51 | $52,828.49 | $66,451.25 | $52,828.49 | $66,451.25 |

[6] These expenses include $4,086.48 for forensic services rendered by Kroll, $102,392.50 for claims services rendered by RFS, and $6,689.00 for claims noticing services rendered by Fleishman, and invoiced to H&K.

[7] H&K actually incurred $144,369.52 in fees and $72,171.51 in expenses, for a total of $216,541.03, during the First Application Period, but limited that application to $125,000 pursuant to the Fee Cap.  H&K does not intend to make an application for the remaining $91,541.03 in fees incurred over the Fee Cap during the First Application Period.

| | | Requested | | Allowed | | Paid | |
|---|---|---|---|---|---|---|---|
| Second Interim; 8/2/2021 (Docket # 103) | 6/23/2018 – 12/31/2019 | $138,865.27 | $16,734.49 | $138,865.27 | $16,734.49 | $138,865.27 | $16,734.49 |
| **TOTALS:** | | $191,693.76 | $88,906.00 | $191,693.76 | $88,906.00 | $191,693.76 | $88,906.00 |

43.     No balance remains outstanding from the prior fee period.

44.     Through this Application, H&K further requests entry of an Order authorizing the Receiver to make payment to H&K in the amount of $265,673.45.

45.     The names, hours worked, hourly billing rates, and total fees of all H&K professionals who have billed time to this matter, excluding the Receiver, are listed in the attached **Exhibit B**.  Standard H&K hourly billing rates have been discounted by 10%.  Travel time has been billed at 50% of H&K's standard hourly billing rates in accordance with the Billing Instructions, and those reduced rates have been further discounted by 10%.  H&K's actual fees for the Third Application Period have been reduced by at least $17,317.60 pursuant to this discount.

46.     In further accordance with the Billing Instructions, H&K professionals have separately categorized their services by task.  The attached **Exhibit C** summarizes the respective number of hours incurred relative to each task category during the Third Application Period.

47.     The services rendered by H&K are itemized fully in the contemporaneously maintained electronic time records attached hereto as **Exhibit D**.

48.     An itemization of reasonable and reimbursable expenses incurred by H&K at the levels set forth in accordance with the Billing Instructions is attached hereto as **Exhibit E**.  Further details on the services provided by Kroll, RFS, and Fleishman are outlined in **Exhibit E-1**, **Exhibit E-2**, and **Exhibit E-3**, respectively.

**VII. <u>POINTS AND AUTHORITIES IN SUPPORT OF FEE APPLICATION</u>**

49.     The district court's "power to supervise an equity receivership and to determine the appropriate action to be taken in the administration of the receivership is extremely broad." *SEC v. Hardy*, 803 F.2d 1034, 1037 (9th Cir. 1986). That broad authority "arises out of the fact that most receiverships involve multiple parties and complex transactions." *Id.*[8] This "extremely broad" discretion "includes awards of receivership fees, including attorneys' fees." *SEC v. Wang*, 2015 WL 12656904, at *3 (C.D. Cal., Feb. 17, 2015, No. CV 13-7553 JAK (SS)), *citing In re San Vincente Medical Partners Ltd.*, 962 F.2d 1402, 1409 (9th Cir. 1992) ("The award of receivership fees in an SEC action is analogous to the award of receivership fees in bankruptcy proceedings, and we review the district court's award for an abuse of discretion.").

50.     Decisions regarding the timing and amount of an award of fees and costs are committed to the sound discretion of the Court. *See Drilling & Exploration Corp. v. Webster*, 69 F.2d 416, 418 (9th Cir. 1934) ("The court appointing the receiver has full power to fix the compensation of such receiver and the compensation of the receiver's attorney or attorneys."); *Quilling v. Trade Partners, Inc.*, 572 F.3d 293, 301 (6th Cir. 2009) ("[T]he district court has wide discretion in distributing receivership assets."); *SEC v. Elliot*, 953 F.2d 1560, 1577 (11th Cir. 1992) (rev'd in part on other grounds, 998 F.2d 922 (11th Cir. 1993)); *SEC v. Wang*, 2015 WL 12656904, at *1; *SEC v. Small Business Capital Corp.*, 2014 WL 3920320, at *2 (N.D. Cal. Aug. 7, 2014).

51.     An award of interim fees may be appropriate where, like here, a receiver or the professionals employed by the receiver "regularly devote[] a portion of his time, either daily or weekly, to the administration of the estate[.]" *In Re McGann Mfg. Co.*, 188 F.2d 110, 112 (3d Cir. 1951) (interim fees to bankruptcy trustee or his counsel); *see also SEC v. Small Bus. Cap. Corp.*, No. 5:12-CV-03237 EJD, 2014 WL 1901257, at *1

---

[8] *See also Id.* at 1037 (Recognizing that "case law involving district court administration of an equity receivership (once the receivership is underway) is sparse…").

THIRD INTERIM FEE APPLICATION OF COUNSEL FOR RECEIVER

(N.D. Cal. May 9, 2014) (granting interim fee application to receiver and receiver's counsel).

52.     In allowing fees, a court should consider "the time, labor and skill required, but not necessarily that actually expended, in the proper performance of the duties imposed by the court upon the receiver[], the fair value of such time, labor and skill measured by conservative business standards, the degree of activity, integrity and dispatch with which the work is conducted and the result obtained." *United States v. Code Prods. Corp.*, 362 F.2d 669, 673 (3d Cir. 1966) (internal quotation marks omitted). Moreover, an "award of interim fees is appropriate 'where both the magnitude and the protracted nature of a case impose economic hardships on professionals rendering services to the estate.'" *SEC v. Small Bus. Cap. Corp.*, 2014 WL 1901257, at *2 (quoting *In re Alpha Telcom, Inc.,* No. 01–CV–1283–PA, 2006 WL 3085616, at *3 (D.Or. Oct. 27, 2006)).

53.     In practical terms, when awarding interim fees, receiver and professional compensation turns upon the result of an equitable, multi-factor balancing test involving the "economy of administration, the burden that the estate may be able to bear, the amount of time required, although not necessarily expended, and the overall value of the services to the estate." *Id*. (quoting *In re Imperial 400 Nat'l, Inc.*, 432 F.2d 232, 237 (3d Cir. 1970)).  Regardless of how this balancing test is formulated, no single factor is determinative and "a reasonable fee is based [upon] all circumstances surrounding the receivership." *SEC v. W.L. Moody & Co.*, *Bankers (Unincorporated)*, 374 F.Supp. 465, 480 (S.D. Tex. 1974). Generally, the starting point is to multiply the number of hours expended by an hourly rate.  *Southwestern Media, Inc. v. Rau*, 708 F.2d 419, 427 (9th Cir. 1983) (bankruptcy case). The hourly rate is based on the rate the professional would charge for comparable service in other matters. *Id.*

54.     "As a general rule, the expenses and fees of a receivership are a charge upon the property administered." *Gaskill v. Gordon*, 27 F.3d 248, 251 (7th Cir. 1994) (citing *Atl. Trust Co. v. Chapman*, 208 U.S. 360 (1908)); *see also SEC v. Nationwide*

*Automated Sys. Inc.*,  CV 14-07249 SJO (FFMx), 2018 WL 11295810 (C.D. Cal. April 26, 2018) (quoting *Gaskill* and granting thirteenth interim fee applications of receiver and counsel). These expenses include the fees and expenses of the Receiver's professionals, including H&K.

55.     In support of the application, H&K submits the above-referenced Exhibits A-E for the Court's review, along with the Certification of Jose A. Casal addressing the reasonableness of the rates charged and hours billed by professionals at H&K.

56.     H&K has charged fees that are 10% less than the standard billing rates for the professionals working on this matter, and those fees are at or below customary fees charged by like professionals in their respective markets.  H&K has billed all reimbursable expenses at their actual costs with no mark-up added, and they are not seeking overhead charges.

57.     Further, pursuant to the Fee Cap, H&K's actual fees for the First Application Period were previously reduced by $91,541.03—which was an additional 63% discount for the services rendered during that prior application period.

58.     As set forth above and in the Claims Process Status Notice, among other filings, H&K has assisted the Receiver in performing various tasks that have added value to the Receivership Entities.  Each task was staffed and performed as efficiently as possible.  The fees and expenses sought in this Application are reasonable and were necessary for the proper administration of the Receiver's duties.

## VIII.     <u>CONCLUSION</u>

H&K therefore respectfully requests that this Court enter an Order:

1.     Allowing, on an interim basis, fees in the amount of $155,858.40 and reimbursement of expenses in the amount of $109,815.05, for total compensation of $265,673.45;

2.     Authorizing and directing the Receiver to make payment to H&K in the amount of $265,673.45; and

THIRD INTERIM FEE APPLICATION OF COUNSEL FOR RECEIVER

3.      Directing such other and further relief as the Court deems appropriate.

Dated:  August 10, 2022              Respectfully submitted,

HOLLAND & KNIGHT LLP

/s/ *Kristina S. Azlin*
Jose A. Casal (*pro hac* vice)
Kristina S. Azlin (SBN 235238)
Samuel J. Stone (SBN 317013)

*Attorneys for Josias Dewey, Court-appointed Receiver for Receivership Entities*

THIRD INTERIM FEE APPLICATION OF COUNSEL FOR RECEIVER